UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and HOWARD McDOUGALL, as Trustee, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 09 CV 7480 |
| KING DODGE, INC., a Delaware corporation, | ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) ) | |

## MEMORANDUM ORDER

After Defendant, King Dodge, Inc., withdrew from a multiemployer pension plan, Plaintiff, the Central States, Southeast and Southwest Areas Pension Fund (the "Fund"), assessed withdrawal liability and notified Defendant of the amount due. Defendant believes that its sale of assets to a successor excuses it from the obligation to pay the withdrawal liability assessment. Defendant failed, however, to seek arbitration of that issue. In this action, Plaintiff asserts that the liability is, therefore, uncontested and seeks summary judgment in its favor. For the reasons set forth here, the motion is granted.

## ANALYSIS

Plaintiff Fund is a non-profit, multiemployer pension fund created under and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980. Pl.'s 56.1 [15] ¶¶ 1, 4. For some time prior to 2006, Defendant King Dodge was bound by collective bargaining agreements that required it to make pension contributions to the Fund on behalf of some of its employees. Sprau Aff. ¶¶ 2, 6, Ex. A to Pl.'s 56.1.

In December 2005, King Dodge sold its assets to Don Brown Automotive Group, Inc. ("Don Brown"). Def.'s 56.1 Statement of Additional Facts [21] ¶ 22. In the transaction, Don Brown

acquired substantially all of King Dodge's assets and assumed the lease for King Dodge's facilities. *Id.* ¶¶ 23, 24. Don Brown also retained all of the employees who were employed by King Dodge at the time of the sale. *Id.* ¶ 26.

In January 2006, King Dodge ceased participation in the Fund, effecting a "complete withdrawal" under federal law. Pl.'s 56.1 ¶ 7. On or around May 18, 2006, King Dodge received a notice of the withdrawal liability owed to the Fund. *Id.* at ¶ 9; Sprau Aff. ¶¶ 9-10, Ex. A to Pl.'s 56.1. In the ensuing months, the Plan issued two additional notices with revised amounts owed, one in September 2006 and a second in November 2006. Sprau Aff. ¶¶ 12-15, Ex. A to Pl.'s 56.1. The September 2006 notice calculated the total owed as $736,777.90; in the November notice, the amount owed was reduced to $695,578.10. *Id.* Both notices included a revised schedule of payments. Sprau Aff. Ex. 2-3, Ex. A to Pl.'s 56.1.

Until May 2009, King Dodge did make a number of payments pursuant to the schedule. On May 20, the Fund issued a notice, advising King Dodge that withdrawal liability payments were past due and outlining the consequences of failure to pay. Pl.'s 56.1 ¶¶ 16, 17. King Dodge failed to adhere to the payment schedule and is therefore in default. *Id.* at ¶ 19. Although it now contests liability, King Dodge did not initiate arbitration to challenge the obligation. *Id.* at ¶ 20. In December 2009, Plaintiff filed this action to collect withdrawal liability, interest, and penalties resulting from the Defendant's withdrawal from a multiemployer pension plan. In response to the complaint, King Dodge urges that only its successor, Don Brown, is liable for pension fund contributions. Plaintiff contends that Defendant King Dodge remains liable and that, because King Dodge did not exercise its right to arbitration, any defenses to nonpayment have been waived. Pls.' Memo in Support of Their Motion [14], 9-10.

The court agrees. Don Brown may well be a successor employer to King Dodge. For purposes of collective bargaining, a new employer is obligated to bargain with the union representing the predecessor employer when (1) there is "substantial continuity" between the two

businesses; (2) the bargaining unit of employees in the new business remains the appropriate unit for collective bargaining; and (3) the new employer's workforce contains a majority of the predecessor's former employees. *See Shares, Inc. v. National Labor Relations Board*, 433 F.3d 939, 943 (7th Cir. 2006). In the context of withdrawal liability, similarly, the court considers whether the business of the new employer is essentially the same as the predecessor; whether the employees of the successor are performing the same kind of work, in the same conditions and with the same supervisors; and whether the successor has the same production process and customer base. *Central States, Southeast and Southwest Areas Pension Fund v. Hayes*, 789 F. Supp. 1430, 1435 (N.D. Ill. 1992) (Grady, J.) These factors appear in this case, where Don Brown took over Defendant King Dodge's business and assets, and employed all of King Dodge's staff. The court will assume, further, that Don Brown was or should have been on notice of King Dodge's withdrawal liability obligation. King Dodge contends that Don Brown's status as a successor employer excuses King Dodge from payment of withdrawal liability, but the case law defeats this argument. *Cf. Golden State Bottling Co., Inc. v. National Labor Relations Board*, 414 U.S. 168, 186-87 (1973) (predecessor and successor employers were jointly and severally liable for backpay awarded by NLRB). Instead, a successor employer becomes a second responsible party in case the original employer lacks the means to make the payment. The cases cited by King Dodge are not to the contrary. *Upholsterers' International Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323 (7th Cir. 1990) recognizes that a successor employer with notice of its predecessor's liability may be liable for pension fund contributions–but does not suggest that the original employer will then be off the hook. *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740 (7th Cir. 1985) reaches the same conclusion, imposing successor liability for a Title VII violations, but not excusing the original employer.

    Any effort on the part of King Dodge to shift responsibility to Don Brown fails for an independent reason as well: King Dodge failed to initiate arbitration on this issue. Even a valid

defense may be waived by a party's failure to seek arbitration on that defense. *See Slotky*, 956 F.2d at 1373. A nearly identical recent case illustrates the point: In *Central States, Southeast and Southwest Areas Pension Fund v. King Chrysler Jeep, Inc.,* No. 09 C 7474, 2010 WL 1197368, at *1 (N.D. Ill. March 19, 2010), the same Plaintiff who brought this case sought to recover withdrawal liability from King Chrysler Jeep. As in this case, King Chrysler Jeep withdrew from the Plan after selling its assets to Don Brown. Also as here, King Chrysler Jeep argued that Don Brown is a successor employer and is therefore responsible for the withdrawal liability payments. Judge Shadur of this court explained that the successor liability doctrine provides a creditor who is unable to recover from the principal debtor with a second opportunity to collect. *Id.* at *2 (quoting *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48 (7th Cir. 1995) for the proposition that "a second opportunity for a creditor to recover . . . is precisely the point of successor liability . . . ."). In that case, as in this one, the court concluded that King Chrysler Jeep's failure to seek arbitration on its successor liability defense constituted a waiver of that defense. 2010 WL 1197368, *3. Here, too, Defendant's failure to initiate arbitration dooms any defense "that would challenge the fact or amount of withdrawal liability." *Id.* King Dodge has forfeited any defense to Plaintiffs' claim in this case.

## **CONCLUSION**

Plaintiffs' motion for summary judgment [13] is granted. A status conference is set for Monday, August 10, 2010, at which time the court expects Plaintiff to submit a proposed judgment in sum certain.

ENTER:

Dated: July 27, 2010

_____
REBECCA R. PALLMEYER
United States District Judge